# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 17-255V
**Filed: February 7, 2022**
UNPUBLISHED

|  |  |
|---|---|
| SYLVESTER WILLIAMS,<br><br>       Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>       Respondent. | Special Master Horner<br><br>Interim Attorneys' Fees and Costs |

*Joseph Alexander Vuckovich*, Maglio Christopher & Toale, P.A., Washington, DC, for petitioner.
*Althea Walker Davis*, U.S. Department of Justice, Washington, DC, for respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On August 17, 2021, petitioner moved for an award of interim attorneys' fees and costs. (ECF No. 83.) On August 31, 2021, respondent filed a response deferring to the special master regarding the amount and appropriateness of an award of interim fees and costs. (ECF No. 84.) The following day, petitioner filed a reply. (ECF No. 85.) Petitioner requests $121,050.00 to be paid for attorney's fees with an additional $48,362.27 to be paid for other costs for a total of $169,412.27. For the reasons discussed below, I award petitioner $168,362.27 in interim attorneys' fees and costs.

### I. Procedural History

Petitioner filed his petition for compensation on February 22, 2017, alleging that his autoimmune hepatitis ("AIH") was caused by the hepatitis B vaccine he received on June 30, 2015. (ECF No. 1.) This case was originally assigned to Special Master

---
[1] Because this decision contains a reasoned explanation for the special master's action in this case, it will be posted on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. *See* 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the Internet.** In accordance with Vaccine Rule 18(b), petitioner has 14 days to identify and move to redact medical or other information the disclosure of which would constitute an unwarranted invasion of privacy. If the special master, upon review, agrees that the identified material fits within this definition, it will be redacted from public access.

1

Millman on February 23, 2017. (ECF No. 4.) This case was reassigned to my docket on June 6, 2019. (ECF No. 56.) Petitioner filed medical records between March 7, 2017 and September 1, 2021. (ECF Nos. 7, 18, 34, 65, 75, 86.) Respondent filed his rule 4(c) report recommending against compensation on September 28, 2017. (ECF No. 12.) Following the government's Rule 4(c) report, the parties submitted several rounds of expert reports between January 30, 2018 and August 5, 2021. (ECF Nos. 24, 41, 42, 54, 61, 65, 66, 71, 79, 82.) Thereafter, petitioner filed the instant motion. (ECF No. 83.)

## II. Awards of Interim Attorneys' Fees and Costs

Section 15(e)(1) of the Vaccine Act allows for the special master to award "reasonable attorneys' fees, and other costs." 42 U.S.C. § 300aa–15(e)(1)(A)–(B). Petitioners are eligible for an award of reasonable attorneys' fees and costs if they are entitled to compensation under the Vaccine Act, or, even if they are unsuccessful, if the special master finds that the petition was filed in good faith and with a reasonable basis. *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1352 (Fed. Cir. 2008).

Additionally, the Federal Circuit has concluded that interim fee awards are permissible and appropriate under the Vaccine Act. *Shaw v. Sec'y of Health & Human Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera*, 515 F.3d at 1352. In *Avera*, the Federal Circuit stated, "[i]nterim fees are particularly appropriate in cases where proceedings are protracted and costly experts must be retained." 515 F.3d at 1352. In *Shaw*, the Federal Circuit clarified that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375; *see also Chinea v. Sec'y of Health & Human Servs.*, No. 15-95V, 2019 WL 3206829 at *2 (Fed. Cl. Spec. Mstr. June 11, 2019) (citing *Knorr v. Sec'y of Health & Human Servs.*, No. 15-1169V, 2017 WL 2461375 (Fed. Cl. Spec. Mstr. Apr. 17, 2017)) (observing three factors that have been considered when exercising discretion to award interim attorney's fees: (1) whether the fee request exceeds $30,000, (2) whether the expert costs exceed $15,000, and (3) whether the case has been pending for over 18 months.)

In light of the above, I exercise my discretion to allow an award of interim fees and costs. This petition was filed nearly five years ago. In that time, petitioner has incurred significant costs relative to securing medical records and expert support for his claim. The amounts sought for fees and costs exceed the $30,000.00 and $15,000.00 figures cited in *Chinea*. Moreover, respondent has not objected, but instead deferred to my discretion as to whether the standard for an interim award of fees and costs is met in this case.

## III. Amount of Reasonable Fees and Costs

The determination of the amount of reasonable attorneys' fees is within the special master's discretion. *See, e.g. Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1520 (Fed. Cir. 1993). Special Masters have "wide latitude in determining the reasonableness of both attorneys' fees and costs." *Hines v. Sec'y of Health & Human*

*Servs.*, 22 Cl. Ct. 750, 753 (Fed. Cl. 1991). Moreover, special masters are entitled to rely on their own experience and understanding of the issues raised. *Wasson v. Sec'y of Health & Human Servs.*, 24 Cl. Ct. 482, 483 (Fed. Cl. 1991) *aff'd in relevant part,* 988 F.2d 131 (Fed. Cir. 1993) (per curiam). However, petitioner "bears the burden of establishing the hours expended" and the reasonableness of the requested fee award. *Id*. at 484. Notwithstanding that respondent has not raised any specific objections to petitioner's fee application, "the Special Master has an independent responsibility to satisfy himself that the fee award is appropriate and [is] not limited to endorsing or rejecting respondent's critique." *Duncan v. Sec'y of Health & Human Servs.*, No. 99-455V, 2008 WL 4743493 (Fed. Cl. 2008); *see also McIntosh v. Sec'y of Health & Human Servs.*, 139 Fed Cl. 238, 250 (2018) (finding that the special master "abused his discretion by failing to independently review the petitioner's counsel's motion for attorneys' fees and reimbursement of case costs to determine if the requested fees and costs were reasonable."). Furthermore, "the Special Master [has] no additional obligation to warn petitioners that he might go beyond the particularized list of respondent's challenges." *Duncan,* 2008 WL 4743493.

Special Masters use the lodestar approach to determine what constitutes reasonable attorneys' fees under the Vaccine Act. *Avera,* 515 F.3d at 1347. The lodestar approach involves first determining "an initial estimate of a reasonable attorneys' fee by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" *Id*. at 1347–48 *(*quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). Once a court makes that initial calculation, it may then make an upward or downward departure to the fee award based on other specific findings. *Id*. For attorneys receiving forum rates, the decision in *McCulloch v. Secretary of Health & Human Services* provides a further framework for consideration of appropriate ranges for attorneys' fees based upon the experience of the practicing attorney. No. 09-293V, 2015 WL 5634323, at *19 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has since updated the *McCulloch* rates to adjust for inflation and the Attorneys' Forum Hourly Rate Fee Schedules for successive years can be accessed online.[2]

I have reviewed the billing records submitted by petitioner's counsel. All of the rates requested are reasonable and consistent with what has been awarded to petitioner's counsel in prior cases. *See, e.g., Barlow v. Sec'y of Health & Human Servs.*, No. 19-123V, 2021 WL 2768383 (Fed. Cl. Spec. Mstr. June 7, 2021); *Todd v. Sec'y of Health & Human Servs.*, No. 15-860V, 2020 WL 5820959 (Fed. Cl. Spec. Mstr. Aug. 31, 2020); *Webb v. Sec'y of Health & Human Servs.*, No. 16-1627V, 2019 WL 2153278 (Fed. Cl. Spec. Mstr. Mar. 18, 2019); *Shawgo v. Sec'y of Health & Human Servs.*, No. 17-306V, 2018 WL 6520892 (Fed. Cl. Spec. Mstr. Oct. 10, 2018). Additionally, the hours billed appear to be reasonable as well.

---

[2] Each of the Fee Schedules for 2015 through 2021 can be accessed at http://www.cofc.uscourts.gov/node/2914. The hourly rates contained within the schedules are derived from the decision in *McCulloch*, 2015 WL 5634323. The schedules are adjusted for inflation using the Producer Price Index for Offices of Lawyers ("PPI-OL").

Attorneys' costs are subject to the same reasonableness requirements as attorneys' fees. *See Perriera v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375. The majority of the costs incurred in this case are for expert reporting with the remainder attributed to legal research, mailing, and medical records requests. (ECF No. 51-1, p. 75.)

Reasonable expert costs are calculated using the same lodestar method used when calculating attorneys' fees. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *37 (Fed. Cl. Spec. Mstr. June 12, 2009). Regarding expert fees, "[t]he question is not whether [the expert] expended the numbers of hours claimed, but whether it was necessary or reasonable for him to do so." *Baker v. Sec'y of Health & Human Servs.*, No. 99-653V, 2005 WL 6122529, at *4 (Fed. Cl. June 21, 2005) (quoting *Wasson v. Sec'y of Health & Human Servs.*, No. 90-208V,1991 WL 135015, at *3 (Fed. Cl. Spec. Mstr. July 5, 1991), *remanded*, 24. Cl. Ct. 482, 483 (1991), *aff'd*, 988 F.2d 131 (Fed. Cir. 1993)). An expert retained by the petitioner in the Vaccine Program will only be compensated at a reasonable hourly rate, and the petitioners have the burden of demonstrating that the expert costs incurred were reasonable. *Ceballos v. Sec'y of Health & Human Servs.*, No. 99–97V, 2004 WL 784910, at *13 (Fed. Cl. Spec. Mstr. Mar. 25, 2004).

Many Vaccine Program cases provide a general framework for determining the appropriate rate for experts, which have largely fallen within a range between $250 and $500 an hour, with a recent trend of awarding rates higher rates. *See O'Neill v. Sec'y of Health & Human Servs.,* No. 08–243V, 2015 WL 2399211, at *17 (Fed. Cl. Spec. Mstr. Apr. 28, 2015) (awarding an hourly rate of $400 to an expert in neurology); *Dingle v. Sec'y of Health & Human Servs.*, No. 08–579V, 2014 WL 630473, at *8 (Fed. Cl. Spec. Mstr. Jan. 24, 2014) (expert did not have "specialized knowledge and experience" in the case to justify his requested hourly rate of $500 and, accordingly, rate was reduced to $400 per hour); *Allen v. Sec'y of Health & Human Servs.*, No. 11–051V, 2013 WL 5229796, at *2 (Fed. Cl. Spec. Mstr. Aug. 23, 2013) (approving a rate of $500 per hour for an expert in neurology and immunology and who also had expertise in a pertinent area to the issue in the case); *Chen Bou v. Sec'y of Health & Human Servs.,* No. 04-1329V, 2007 WL 924495, at *10, *16 (Fed. Cl. Spec. Mstr. Mar. 9, 2007) (awarding an expert a rate of $350 per hour based in part on his poor performance in testifying at hearing, but noting that "[b]ased upon the information submitted [ ], with the appropriate set of facts the undersigned would have no issue with awarding the $500 requested by petitioner")). Importantly, however, there is no established ceiling for expert rates and the reasonableness of each rate is assessed individually based on factors relating to the expert's qualifications and performance. Factors to consider in setting an expert hourly rate include the expert's prior experience in the program, efficiency, effectiveness, and particular expertise. *See e.g., Smith v. Sec'y of Health & Human Servs.,* No. 18-43V, 2020 WL 1243238 (Fed. Cl. Spec. Mstr. Feb. 20, 2020) ("Rather, the reasonableness of any given expert's hourly rate will be based on individual factors such as credentials, particular expertise, efficiency, and effectiveness."); *Lewis v. Sec'y of Health & Human Servs.*, 149 Fed. Cl. 308, 321 (2020) (citing *Frantz v. Sec'y of Health & Human Servs.*, 146 Fed. Cl. 137, 145 (2019) ("With respect to an expert's rate, the inquiry is whether

4

the rate is that prevailing in the community for similar services by experts of reasonably comparable skill, experience, and reputation.").

Petitioner's first expert, Dr. Gershwin, is a well-known and experienced expert in the vaccine program, and his requested rate of $500 per hour is regularly allowed. *See e.g., Eamick v. Sec'y of Health & Human Servs.*, No.15-519V , 2020 WL 2467081 (Fed. Cl. Spec. Mstr. Apr. 10, 2020); *Lewis v. Sec'y of Health & Human Servs.*, No. 16-1604V, 2020 WL 4578584 (Fed. Cl. Spec Mstr. July 8, 2020); S*oltys v. Sec'y of Health & Human Servs.*, No. 17-401V, 2020 WL 5049411 (Fed. Cl. Spec. Mstr. June 26, 2020); *Santoroski v. Sec'y of Health & Human Servs.*, No. 15-1294V, 2019 WL 3577842 (Fed. Cl. Spec. Mstr. June 8, 2020). Dr. Gershwin's invoices document a total of 51 hours of work (totaling $25,500.00) accompanied by detailed explanations of each task performed while preparing his report, the time expended to complete each task, and the total amount billed for the task. (*See* Ex. 130, pp. 40, 85-86, 89.) I find that these hours and the requested rate are reasonable and consistent with what has been awarded in prior cases.

Petitioner also filed an expert opinion from Robert Gish, M.D., who is presented as an expert in hepatology. It appears that this is the first time Dr. Gish has provided an expert report in the program and so no previously established hourly rate exists for Dr. Gish's work. There is a dearth of cases that have addressed the appropriate hourly rate for hepatology experts within the program. Notably, however, gastroenterology and hepatology are adjacent or overlapping disciplines. *E.g. Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2004 WL 627777, at *8 (Fed. Cl. Mar. 12, 2004) (noting petitioner's expert to be board certified in gastroenterology and serving as an attending physician in hepatology and gastroenterology), *review granted, decision rev'd Hocraffer v. Sec'y of Health & Human Servs.*, 63 Fed. Cl. 765 (2005). In fact, gastroenterologists have previously opined in autoimmune hepatitis cases. *E.g. Rotoli v. Sec'y of Health & Human Servs.*, 89 Fed. Cl. 71 (2009) (respondent presenting a gastroenterology expert in an autoimmune hepatitis case), *rev'd sub nom. Porter v. Sec'y of Health & Human Servs.*, 663 F.3d 1242 (Fed. Cir. 2011). Additionally, while Dr. Gish does have qualifications specific to hepatology, including board certification in liver transplantation, he otherwise holds board certifications in internal medicine and gastroenterology. (Ex. 106, p. 4.) Accordingly, prior awards of attorneys' costs relative to gastroenterology experts provide at least limited guidance, though very few prior decisions address this specialty either.

In 2017, a special master addressed the hourly rates of two pediatric gastroenterologists who consulted on damages. One had charged a lower patient rate. The other requested an expert rate of $650 per hour. The special master found this to be "extremely high" and reduced the rate to $500 per hour, which the special master still felt was generous given the physician's role as consultant regarding damages rather than as an opining expert regarding causation. *Brooks v. Sec'y of Health & Human Servs.*, No. 14-563V, 2017 WL 6276461, at *5 (Fed. Cl. Spec. Mstr. Apr. 20, 2017). Another gastroenterologist, Dr. Santoro, had his rate reduced from $500 to $400 in his

5

first case within the program in 2016.[3] *Carda v. Sec'y of Health & Human Servs.,* No. 14-191V, 2016 WL 5224406, at *4 (Fed. Cl. Spec. Mstr. Aug. 19, 2016). It does not appear from review of these decisions as though those gastroenterologists are on equal footing with Dr. Gish in terms of the value added to each petitioner's case. Moreover, both decisions were issued about five years ago, suggesting the relevant rates could be different today.[4]

Here, Dr. Gish has billed $600 per hour. His qualifications are particularly notable for the degree to which his experience in hepatology and leadership at the Hepatitis B Foundation align with the allegations in this case. Moreover, although both parties have retained immunologists to speak to the immune aspects of autoimmune hepatitis, the parties are also actively litigating the question of onset. Dr. Gish is petitioner's primary opining expert on that issue. Despite his lack of prior experience in this program, based on his specialty, qualifications, role in this case, performance, and the lack of objection by respondent, I cannot conclude that his requested rate of $600 per hour is inherently unreasonable. Moreover, the total amount requested for reimbursement is not excessive relative to the ultimate work product.

However, Dr. Gish appears to have miscalculated the total number of hours spent on petitioner's case. On his first invoice to petitioner, Dr. Gish billed a total of 15 hours, yet the descriptions of the work done only total 14 hours. (Ex. 130, p. 91.) Accordingly, the award of reimbursement for Dr. Gish's work is reduced by $600.00, from $19,050.00 to $18,450. Additionally, Dr. Gish billed $450 for an hour of 3rd party editing and complication of a bibliography; however, this program does not pay for tasks which are secretarial in nature. *Guy v. Sec'y of Health & Human Servs.,* 38 Fed. Cl. 403,

---

[3] In subsequent cases other special masters have declined to increase that rate apparently owing to the quality of Dr. Stantoro's work product. *See, e.g. Ploughe v. Sec'y of Health & Human Servs.*, No. 14-626V, 2017 WL 4455632, at *4 (Fed. Cl. Spec. Mstr. Sept. 11, 2017); *Campbell v. Sec'y of Health & Hum. Servs.,* No. 16-996V, 2019 WL 5887031, at *4 (Fed. Cl. Spec. Mstr. Oct. 21, 2019). Thus, it appears Dr. Santoro's rate may have limited applicability regarding the general value of a gastroenterology expert's time.

[4] What was considered a reasonable hourly rate five years ago should not necessarily be taken strictly at face value with respect to what would be reasonable today. In that regard, it is notable that the *Brooks* and *Carda* decisions indicate that other gastroenterologists were billing this program between $650 and $500 per hour about five years ago, even if those rates were not accepted at that time. By way of example only, using the Bureau of Labor Statistics Producer Price Index for General Medical and Surgical Hospitals to adjust for inflation, even the reduced $500 per hour rate in 2017 identified by *Brooks* could suggest a rate of about $560 per hour today. The $400 per hour rate identified in *Carda* in 2016 could suggest a current rate of about $453 per hour by the same calculation. However, this is not to say that this particular BLS PPI is the best or only measure of inflation that could be used in this context. Nor does it suggest that inflationary calculations should be directly applied to expert costs. Reference to the BLS PPI is intended only as an example to help contextualize the previously set rates given the age of the prior decisions and the limited number of relevant decisions available. The rate set for Dr. Gish in this case is based on factors specific to his background and role in the case and is not based on any calculation of inflation. (The above-discussed hourly rates were reached by multiplying the original rate identified by each decision by the most recently available index figure (157.639 as of August 2021) and then dividing by the index figure for the month in which the rate was determined (April of 2017 (140.7) for *Brooks* and August of 2016 (139.3) for *Carda*), then rounding to the nearest whole dollar.)

408 (1997) (denying compensation for office overhead including office supplies, administrative or clerical staff, and secretarial support.)  Accordingly, the award is further reduced to $18,000.00.

Finally, petitioner has submitted several pages of miscellaneous costs totaling $3,812.27, primarily involving mailing, records requests, printing services, and legal research.  Upon review, these costs all appear reasonable and sufficiently documented.

### IV.     Conclusion

In light of the above, petitioner's application for interim attorneys' fees and costs is **GRANTED** and petitioner is awarded **a lump sum in the amount of $168,362.27 representing reimbursement for interim attorneys' fees and costs, in the form of a check made payable to petitioner and her counsel, Joseph A. Vuckovich of Maglio Christopher & Toale, P.A.**[5]

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[6]

**IT IS SO ORDERED.**

<u>s/Daniel T. Horner</u>
Daniel T. Horner
Special Master

---

[5] The check should be forwarded to Maglio Christopher & Toale, PA, 1605 Main Street, Suite 710, Sarasota Florida 34236.

[6] Entry of judgment can be expedited by each party's filing of a notice renouncing the right to seek review.  Vaccine Rule 11(a).